## BLUMENTHAL et al. v. CRAIG.

(Circuit Court of Appeals, Third Circuit. June 2, 1897.)

1. JURISDICTION OF FEDERAL COURTS—CITIZENSHIP—ACTION BY NEXT FRIEND.
 A next friend conducting a suit in behalf of an infant is not a party to the action, and his citizenship is not a test of the jurisdiction of the federal courts.

2. OPINION EVIDENCE—MASTER AND SERVANT—DEFECTIVE MACHINE.
 In an action in which one of the issues is whether the condition of a machine by which the plaintiff has been injured of itself warned plaintiff of danger, it is not error to allow a more experienced workman to testify as to whether he would have known the machine, in such condition, to be dangerous.

3. MASTER AND SERVANT—DEFECTIVE MACHINERY—EVIDENCE.
 When a witness is called for the purpose of showing that a machine, through which an accident has happened, is not absolutely safe, even when in perfect condition, it is not error to allow him to be asked, on cross-examination, whether he had ever known of such an accident through a perfect machine.

4. SAME—CONTRIBUTORY NEGLIGENCE—YOUTH AND INEXPERIENCE.
 In considering the question of contributory negligence, youth and inexperience of a plaintiff are to be taken into account, and it is not error, in connection with proper instructions as to the obligations of the plaintiff, to direct the jury to make proper allowance therefor, nor to refuse a requested instruction which applies to the case of a minor,—a rule applicable where minority and inexperience are not factors.

5. SAME—DEFECTIVE MACHINERY—ASSUMPTION OF RISK.
 A defect in a machine and the risk in operating it when defective are not necessarily the same, and the risk may not be patent and obvious, though the defect is so.

In Error to the Circuit Court of the United States for the District of Delaware.

Lewis C. Vandegrift, for plaintiffs in error.

Levi C. Bird and George Gray, for defendant in error.

Before ACHESON and DALLAS, Circuit Judges, and BUFFING-TON, District Judge.

BUFFINGTON, District Judge. This case comes before us on a writ of error to the circuit court of the United States for the district of Delaware. David F. Craig, the plaintiff below, and defendant in error here, by his next friend, Andrew McDougall Craig, brought suit in the superior court of Delaware against Ferdinand Blumenthal and Julian S. Ulman, trading as F. Blumenthal & Co., to recover damages for the loss of a hand and arm while working in their employ. Subsequently the said Andrew McDougall Craig, by agreement of parties, was duly admitted by the court to prosecute the case as next friend of the plaintiff, who was a minor. Thereafter, as appears by the record of that court removed to the court below, the defendants filed a petition, signed by counsel as "Attorneys for Petitioners," alleging the petitioners were citizens of the state of New York, and that "David F. Craig, the plaintiff above named, was then, and still is, a citizen of the state of Delaware," and averring the statutory amount was in dispute. With the petition they filed a bond with surety given to David F. Craig, who was therein styled the plaintiff,

and the individual defendants were named and styled defendants and petitioners. Thereupon the cause was removed to the United States circuit court for the district of Delaware, trial there had, and a verdict recovered in favor of the plaintiff; whereupon the defendants filed a motion in arrest of judgment, alleging, inter alia, that the petition for removal was not the petition of the defendants, or either of them; that Andrew McDougall Craig, the next friend, was a party to the controversy, and that his citizenship was not disclosed; that the cause was improperly removed, and the trial court was wholly without jurisdiction. The court declined to allow the motion, and entered judgment, whereupon the cause was removed to this court for review of its said action and of sundry alleged errors during the trial.

So far as the questions raised by the motion in arrest of judgment are concerned, we are of opinion no error was committed by the court below. The record of the cause, certified to by the clerk of the superior court of Delaware, and returned to the circuit court, shows that the defendants presented the petition and bond for removal, and identifies their counsel by name, and the petition is signed by the same counsel as attorneys for petitioners. This part of the motion is, therefore, without merit. The other contention, based upon the absence of averment as to the citizenship of Andrew McDougall Craig, the next friend, is equally untenable. The constitution (article 3, § 2) provides that "the judicial power shall extend * * * to controversies * * * between citizens of different states." If, therefore, the parties to the present controversy are David F. Craig, the minor, and the defendants alone, the circuit court had jurisdiction. But it is asserted that the next friend is a party to the controversy, and that his citizenship must affirmatively appear, and be such as to give jurisdiction. The solution of this question involves the status and relation of a prochein ami, or next friend, to an action. Upon this point the authorities are clear. In the first place, the minor's rights are the subject of the action and the basis on which the right of action rests. The presence of the next friend upon the record is not in order to vest a right of action in the minor, but to aid in the enforcement of a right already vested. When the minor is so represented, he, and he alone, is recognized as the real party to the controversy, and his rights are concluded by the judgment of the court.

In Morgan v. Thorne, 7 Mees. & W. 407, the court, in discussing the relation of the minor to the litigation, said:

"It is clear that any prochein ami is to be considered as an officer of the court, specially appointed by them to look after the interests of the infant, on whom the judgment in the action is consequently binding, and who cannot be allowed, on attaining his age, to commence fresh proceedings founded on the same cause of action."

In Sinclair v. Sinclair, 13 Mees. & W. 645, this case was followed. The competency of the prochein ami as a witness under the statute there turned—as the court expressed it—upon the question "whether the prochein ami is a party to the suit. If he is, he is a party named in the record, and cannot be examined." It was decided that, though

named on the record, and liable for costs, he was not considered a party to the suit, and was, therefore, competent as a witness. To the same effect are numerous American decisions, among which we note Brown v. Hull, 16 Vt. 673; Anon., 2 Hill, 417; and Railroad Co. v. Fitzpatrick, 36 Md. 624,—where the courts say:

"The relation of a prochein ami to the action, and his powers and duties, are simple and well defined. He is no party to the suit in the technical sense of the term, although he is responsible for costs. He is considered as an officer of the court, specially appointed by it to look after the action of the infant in whose behalf he acts."

Such being the law, there was no error in the court declining to arrest judgment. The citizenship of the next friend was not a test of its jurisdiction.

We now turn to the alleged trial errors as set forth in the assignments which we will consider seriatim save the first, second, and fifth, which are not urged. To rightly understand the rulings, charge, and answer to points, a brief statement of the facts shown on the trial is proper. A careful examination of the proofs warrant us in adopting as correct the following extract of the charge as showing such facts:

"The plaintiff entered the employment of the defendant in September, 1895. and was put to work on a fleshing machine, which is used for the purpose of removing particles of flesh that may be adhering to the skins which are passed through it. The operation does not appear to be at all dangerous when the machine is in good order. The machine is not very large, and is of simple construction. It consists of a cylinder, which is provided with spiral knives or cutters, between which cylinder and a roller, both being placed in a horizontal position, and made to revolve with great rapidity, a skin is inserted by a boy called 'the feeder,' who stands on one side of the machine, while another boy, called 'the catcher,' who stands on the opposite side, receives the edge of the skin, and pulls it out. Occasionally a skin becomes twisted or turns away in coming through, and 'the catcher's' duty is to straighten it. Sometimes the skin wraps around the roller, and the machine must be stopped, and the skin removed. The attendance on the machine does not require any considerable skill or experience. Attention and alertness of movement would seem to be all-sufficient for the work, and boys are generally employed in its performance. On the side where the plaintiff stood to receive the skins, a slated hood or box, similar to that on a 'roll top desk,' came down over the cylinder and roller to within a very short distance of the outlet for the skin. leaving a space just wide enough for the skin to come through. When this hood was in good and proper condition, there was evidence that the catcher could not get his hand under it while in the usual and ordinary performance of his work. The plaintiff had been attending the machine from the early part of September until a week or more before the lowest slat of the hood broke, leaving a space of from two inches to two and a half inches in width at the bottom. This defect was immediately made known to the foreman in chief, but was not repaired until after the happening of the accident by which the plaintiff lost his arm. * * * In the meantime the plaintiff kept at work on the defective machine without any special instruction or warning to be more careful and cautious in his work."

Among other grounds of defense it was alleged the defect of the broken hood was a patent one, and that the plaintiff, having voluntarily chosen, after knowing of such break, to work on the machine, must be deemed to have assumed the risk of injury therefrom. During the trial, Henry Quashni, a boy who had worked nine months on these fleshing machines, who saw the broken slat on the one on which

Craig was injured, and who had stated that, if the slat had been on the machine, it would have been perfectly safe, was permitted, against defendants' objection, to answer a question as to whether, with the experience he had had, he would have known the broken slate made the machine more dangerous to work upon. We can see no error in this question, which constitutes assignment No. 2½.

One of the issues was whether the broken hood of itself warned the plaintiff of increased danger. The witness, a much more experienced boy, who saw the broken slat, in substance said it did not so impress him. Clearly, this was relevant and proper testimony.

The next assignment,—No. 3,—viz.: "That the court erred in that by the charge as originally delivered orally, as well also as by the one subsequently written and herein contained, it continuously impressed upon the jury by said charge and its instructions that the said plaintiff was not of sufficient age to understand and appreciate, and did not understand and appreciate, the alleged increased danger of operating said machine with the lowest slat in the hood thereof broken, whereas the evidence in the case clearly showed that said plaintiff was fully capable of understanding and appreciating any increased danger by reason of said slat being broken as aforesaid," —is not well taken. The court nowhere stated "that the plaintiff was not of sufficient age to understand and appreciate, and did not understand and appreciate, the alleged increased danger" complained of. This statement, it seems to us, is based on a misapprehension of the charge. What the court did say was that, after the hood was broken, the plaintiff was "without any special instruction or warning to be more careful and cautious in his work,"—a statement warranted by the evidence. Furthermore, it must be noted that the court explicitly and without qualification charged the jury in the words of defendants' fourth point: "That, in order to find a verdict for the plaintiff in this case, the jury must be satisfied from all the evidence that the plaintiff was ignorant of the danger he incurred while working with the fleshing machine in the condition it was." We are therefore of opinion this assignment is not well taken.

The witness Jettica was called by the defendants, and testified he was a machinist; that he had charge of the machinery in the works for 10 years, including the fleshing machines; and that the hoods were not a perfect protection against injury by the knives. He then explained several ways in which such injury could occur with a perfect hood on the machine. This line of proof was clearly pertinent as meeting the contention of the plaintiff that the machine was absolutely safe when hooded, and, inferentially, that plaintiff was bound to furnish such a perfect machine. Having so testified, Jettica was asked on cross-examination, against objection, whether, within his experience, such an accident had ever happened when the hood was perfect. Having questioned him in chief, as stated, we think the question in cross-examination was proper, and the assignment No. 4 is not sustained.

It is sufficient answer to the sixth assignment, which is "that the court erred in permitting the case to go to the jury upon the testimony submitted by the plaintiff," to say that the court was not asked

by any point to withdraw the case from the jury. Consequently its omission to do so was not error. Nor do we see how it could have so done had such a point been presented.

The next assignment—No. 7—is:

"That the court erred under the evidence submitted in the case in charging the jury that: 'In the meantime the plaintiff was kept at work on the defective machine without any special instruction or warning to be more careful and cautious in his work. In other words, he was not told that there was any greater danger in using the machine after the slat had been broken out than there was before; and while it was in this condition he incautiously or heedlessly, in attempting to catch the edge of the skin, inserted his hand too far under the broken hood.' "

The narrative statement by the court was warranted by the proofs. Boyle, the fleshing-machine operator, who was called by defendants, says that when he put Craig to work originally, when the hood was unbroken, he "warned him of the danger of trying to catch the skin if it was on the roller without stopping the machine." He says he put the plaintiff to work on this broken machine some two weeks before he was hurt. He was then asked: "Q. Was the machine broken when you put him to work on it? A. Yes, sir. Q. Did you give him any instructions then? A. No, sir; only for the catching; not to attempt to take the skin off the roller when the machine was in operation. He knew them instructions." The plaintiff had testified that he was trying to stop the skin, and his hand "slipped in the place where the roller was broken." We think the language used fairly stated the proofs, and consequently no error was committed by its use.

The next assignment—No. 8—refers to the court's language in reference to the warning cards posted in the factory, which plaintiff admits he saw before the accident. The court read the notice, which was as follows:

"Notice. Warning. Keep your eyes on this machine while operating, as it is dangerous. If it is necessary to converse or look around, cease operating the machine. Noticeable neglect of this warning will be met with dismissal. Per order, F. Blumenthal & Co.,"

—To the jury, and said:

"It was a wise precaution on the part of the defendants to have these cards constantly before the boys, so that they might be daily and hourly admonished to attend to their duties, and avoid every apparent danger; but these warning cards did not inform the plaintiff of the increased and extraordinary danger of operating a machine with a broken hood, nor is there any evidence that he received instruction from any source to be more careful in operating the machine after the slat had been broken."

We see no error in this. The notice certainly was no warning of anything except the dangerous character of a perfect machine. Assuredly, there was no error in the court referring to the fact that this notice conveyed no warning of additional danger caused by a broken slat or portion of the hood which covered the revolving knives. Consequently, the assignment should not be sustained.

The next assignment—No. 9—complains of the instruction to the jury that they should "make all proper allowance for his (the plaintiff's) youth and inexperience, for his ignorance of the increased danger caused by the absence of the slat, of which he had no warning."

Taken in its proper connection with the rest of the charge, and with the facts proven in the case, we see no error in this language. The court, in the preceding portion of the charge, had instructed the jury that, if they found the plaintiff "lost his arm through his own carelessness and neglect of duty, or want of proper attention, such as could be reasonably expected from one of his age, and not through inadvertence and inexperience, in the face of an uncommon and unusual danger of which he had received no warning," their verdict should be for the defendants. It then called the jury's attention to the question of contributory negligence in connection with minors, and said the doctrine had been established of taking into consideration in passing on that question "the youth, immaturity of judgment, and the incapacity of the minor to appreciate or realize the danger to which he may be exposed, in the absence of proper instructions and training as to the work in which he is employed," and in that connection used the language complained of. Taken in its proper relation, and bearing in mind the positive instructions afterwards given in answer to the fourth point, to which reference has been made above, there certainly was no error in the court's use of the language complained of. It fairly submitted the question involved to the jury, and there was no error in the way in which it was done.

The next assignment of error—No. 10—consists in the refusal of plaintiff's second point, which was:

"The plaintiff was bound to see patent and obvious defects of the machine with which he was working, and he assumed all patent and obvious risks as well as those incident to the business; and, as he ought to have known of the defects in the hood, if he continued to work with the same, and received injuries therefrom, he is guilty of contributory negligence, and cannot recover."

This was not error. However correct the statement of general principles therein is, the affirmance of this point would have been misleading as applied to the facts of the present case. It virtually called for the application to a minor's conduct of a rule applicable where minority and inexperience were not factors. In substance, it asked the court to say the broken hood was a patent and obvious defect; that the plaintiff assumed all patent and obvious risks; and, if he worked on a broken hood, he was guilty of contributory negligence. This, to our mind, is a non sequitur, and is wholly at variance with the facts proven in this case. The proposition confounds the defect and the risk. They are not necessarily convertible terms. In this case the plaintiff admitted he knew of the defect, but denied he knew of the increased risk arising from such defect; and Boyle, the only witness of defendants' who referred to this point, testified that he considered the broken machine safe enough for a boy to work upon if he followed the directions for working a perfect machine. The inference fairly deducible from his testimony was that the broken hood conveyed no warning of increased danger, for, in his view, a broken-hooded machine was not more dangerous than a perfect one. This point asked the jury to infer a conclusion not warranted by the proofs, and at variance, not only with the testimony on plaintiff's part, but with the defendants' as well. There was no error in its refusal, or in the qualified affirmance of the defendants' third point,

which is also assigned for error as assignment No. 11. In doing so the court very properly noticed the distinction between plaintiff's knowledge of the broken slat, and of his knowledge of the increased risk to which he was exposed by such defect.

We see no error in the twelfth assignment of error, which consisted in the answer to defendants' fifth point, which was:

"That if the jury are satisfied from all the evidence in the case that the plaintiff was of such age of competency, and did have knowledge of the danger incurred by him while working in the machine with the hood thereon in the condition testified to, the fact that he was a minor does not alter the general rule of law upon the subject, and he took upon himself and assumed, not only the risks incident to his employment, but also all the risks which were patent and obvious."

The answer was substantially affirmed, but attention was not improperly called to the youth, inexperience, and length of service of the plaintiff, and his knowledge of the danger. These were all proper elements for the jury's consideration in reaching the conclusion asked for by the point.

We see no error in the answer to the plaintiff's seventh point, which constitutes the thirteenth assignment. It concerned the printed notice, to which reference has already been made, and said that notice did not have reference to a machine with a broken hood.

In the affirmance of defendants' sixth point the court had, in substance, answered what was requested in the eighth prayer. Hence its failure to give to it a categorical answer—which constitutes the fourteenth assignment—is not error.

The fifteenth assignment refers to the answer to defendants' ninth point. This point made a prudent adult's knowledge and conduct under the circumstances of this case the test and standard of the plaintiff's right. It wholly ignored the plaintiff's youth, and there would have been no error in an unqualified refusal of the point as not pertinent to the cause.

An observance by the defendants in this case of the plain duty of furnishing safe appliances to their employés would have resulted in saving them the loss of money, and the plaintiff the loss of his arm. Upon the whole case we are of opinion no reversible error has been shown, and the judgment must be affirmed.