HAINES v. SPENCER.

(Circuit Court of Appeals, Third Circuit. January 27, 1909.)

No. 11, October Term, 1908

1. APPEAL AND ERROR (§ 1033*)—FAVORABLE FINDINGS—RIGHT TO ASSIGN ERROR.

In an action for injuries to a servant, an instruction that defendant's engineer was not authorized to bind defendant by a promise to plaintiff that he would repair an appliance to the laundry mangle, plaintiff was operating, and return it shortly, was favorable to defendant and was not assignable as error by him, except as the attention of the jury was thereby diverted from the real issue.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4056; Dec. Dig. § 1033.*]

<hr>

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. MASTER AND SERVANT (§ 219*)—INJURIES TO SERVANT—MACHINERY—SAFETY APPLIANCES—PATENT DEFECTS—ASSUMED RISK.

Absence of means by which a laundry mangle could be thrown in and out of gear by hand or foot, while standing between the ends of the machine without going around or reaching over it, was a patent defect, the danger of which, whether appreciated or not, was obvious, and was assumed by a mature operator who had worked at the machine about four months without complaint.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 614–616; Dec. Dig. § 219.*]

3. MASTER AND SERVANT (§ 270*)—INJURIES TO SERVANT—DEFECTIVE MACHINERY—COMPARISON OF MACHINES—EVIDENCE.

Though evidence of other machines in common and ordinary use in similar establishments may be admitted for comparison to aid the jury in determining whether the machine by which plaintiff was injured was reasonably safe, proof of other machines having safety appliances, not on defendant's machine, none of which were in issue, was inadmissible.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 921; Dec. Dig. § 270.*]

4. MASTER AND SERVANT (§ 101*)—INJURIES TO SERVANT—MACHINE AND APPLIANCES—DUTY OF MASTER.

An employer is not an insurer, and is not required to furnish the safest or newest and best machines or appliances, but only to exercise due care to provide those reasonably safe.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 172, 181–184; Dec. Dig. § 101.*]

5. MASTER AND SERVANT (§ 101*)—INJURIES TO SERVANT—MACHINES—USAGE OF BUSINESS.

Negligence is not imputable to a master, where the machinery furnished is that which is generally employed.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 185, 186; Dec. Dig. § 101.*]

6. MASTER AND SERVANT (§ 295*)—INJURIES TO SERVANT—MACHINERY—ASSUMED RISK—INSTRUCTIONS.

Where plaintiff, a mature laundry mangle operator of experience, requested repair of a guard rail, and, while it was being repaired, operated the mangle and was injured by her hand being drawn between the rolls, the court erred in refusing to charge that the risk of injury from the absence of the rail was assumed by plaintiff, unless the jury believe that defendant or some one authorized by him so to do had promised to replace the rail and plaintiff continued to operate the machine in reliance on the promise, and that the jury must also find for defendant if no promise to replace was made by defendant or some one authorized to make it.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1177; Dec. Dig. § 295.*

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

7. MASTER AND SERVANT (§ 219*)—INJURIES TO SERVANT—MACHINERY—REVERSING MECHANISM.

A master was not required to furnish reversing mechanism on a laundry mangle, where the risk of injury from the lack of it was obvious.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 614–616; Dec. Dig. § 219.*]

8. DEFECTIVE MACHINERY—COMPLAINT TO MASTER—REFERENCE TO ANOTHER EMPLOYÉ—PROMISE TO FIX—DELEGATED AUTHORITY.

Semble, that where the plaintiff complained to the defendant with regard to the condition of the guard bar of a mangle at which she was working, and was referred by him to his engineer, who had charge of the

machinery, as one who would attend to the matter for her, this was sufficient to clothe the engineer with authority to speak for the defendant, and entitled the plaintiff to rely on the assurance given by him that he would fix it for her; he having taken off the guard bar to do so, and directed her to go on with the work, saying that he would bring it back shortly.

9. MASTER AND SERVANT. (§ 288*) — DEFECTIVE MACHINERY — PROMISE TO FIX SHORTLY—INJURY TWENTY-FOUR HOURS AFTERWARDS.

Where, on complaint by an employé, assurance was given by the master, through his engineer, who was authorized to speak for him, that a defect in the machinery would be remedied shortly, the defective appliance being taken away for the purpose, and the employé being directed to go on with her work, it is for the jury to say whether, under the circumstances, the employé has a right to rely on the assurance as continuing 24 hours afterwards, when she was injured.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1084–1086; Dec. Dig. § 288.*]

In Error to the Circuit Court of the United States for the District of New Jersey.

Malcolm G. Buchanan, for plaintiff in error.

John J. Crandall, for defendant in error.

Before GRAY and BUFFINGTON, Circuit Judges, and ARCHBALD, District Judge.

ARCHBALD, District Judge. The plaintiff was injured by having her hand drawn into a mangle at which she was working. It was caught, as she says, by one of the towels which she was putting through the machine, which the wind, blowing in through the open window, wrapped around her hand before she knew it. It is possible that she was inattentive, as the wind blew the towel away from her hand and not towards it. But that was for the jury. Her story is not so improbable that we can lay hold of it. The negligence charged is in not having a protecting guard bar, as well as means by which to promptly throw off or reverse the power, by which the accident might have been averted. There was such a bar for the machine, but it sagged, and on complaint by the plaintiff to the defendant, her employer, he referred her to Lehman, the engineer, who had charge of the machinery, who promised to fix it, and at the time of the accident had removed it for the purpose of doing so, telling her to go on with her work and he would bring it back shortly. It was taken off Tuesday afternoon, and had not been returned 24 hours later, when the accident occurred, the plaintiff keeping at work meantime without it, relying, as she says on the promise which had been made her.

It was held by the Supreme Court of New Jersey, where the action was originally brought, that Lehman in his capacity as engineer had no authority to speak for the defendant, so as to give the assurance and direction which the plaintiff relied on. Spencer v. Haines, 74 N. J. Law, 13, 64 Atl. 970. But the evidence is different now, the plaintiff having testified that, upon speaking to the defendant about the condition of the guard bar, he referred her to Lehman as one who would attend to it for her, which would seem to be sufficient to clothe

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

him with authority. Notwithstanding this, however, the jury were instructed at the trial in the court below that Lehman was not authorized to speak for the defendant, and that what he said was immaterial, eliminating that as an issue. This favored the defendant, and so, of course, is not assignable for error. But if adhered to, the plaintiff clearly has no case, as the machine, except as to the guard bar, remained in exactly the same condition as when she went to work at it, and the other defects, if any, were obvious; the sole right to recover having thus to be based on the assurance given by Lehman, by which she was led to keep on with her work awaiting the return of the guard bar, assuming, of course, that the machine was not reasonably safe without it. The charge of negligence, in other words, is necessarily confined to the appliance with regard to which the assurance was given, and is not to be extended to other defects as to which there was no complaint and no promise, at least to the extent that the danger from them was obvious. It particularly cannot be predicated on the absence of means by which the machine could be thrown in and out of gear by the operator, by foot or hand, while standing between the ends of the machine, without going around or reaching over it, on which stress is laid and where the court below put it. This, if a defect, was a patent one, the danger from which, whether appreciated or not, was obvious, as to which the plaintiff, being a mature young woman, and having worked at the machine for nearly four months without complaint, must be taken to have been content, assuming whatever risk was involved in it. "Where a defect is known," says Mr. Justice Day in Choctaw, etc., R. R. v. McDade, 191 U. S. 68, 24 Sup. Ct. 25, 48 L. Ed. 96, "or is so patent as to be readily observed by him, he cannot continue to use the defective apparatus, in the face of knowledge and without objection, without assuming the hazard of such a situation. In other words, if he knows of a defect, or it is so plainly observable that he must be presumed to know of it, and continues in the master's employ without objection, he is taken to have made his election to continue in the employ notwithstanding this defect, and in such case cannot recover." This is emphasized by the recent case of Butler v. Frazee in the Supreme Court, 211 U. S. 459, 29 Sup. Ct. 136, 53 L. Ed. ——, which is so remarkably like the one in hand that we are moved to quote at large from it. The plaintiff there, as here, was employed at a mangle in a steam laundry, her duties being to spread the clothes to be ironed on a narrow feed board extending in front of the revolving cylinders, and guide them forward into them. For the greater safety of the operator the machine was equipped with an adjustable bar or finger guard, extending from side to side, and set at the height of an inch or two, according to the thickness of the material to be ironed. On the occasion in question the plaintiff's hand was caught as she was feeding in a tablecloth. It was shown that the feed board was loose, permitting the fabric which was to be laundered to drop between it and the cylinder, and there was evidence that this wrinkled it, which the plaintiff, at the time when her hand was caught, was endeavoring to remedy. It was also contended in explanation of the accident, that the guard bar was set too high, allowing the plain-

tiff's hand to be drawn into the cylinders. But, notwithstanding this, it was held that she had assumed the risk, and that a verdict was rightly directed against her. "One who understands and appreciates the permanent conditions of machinery, premises, and the like," says Mr. Justice Moody, "and the danger which arises therefrom, or by ,the reasonable use of his senses, having in view his age, intelligence, and experience, ought to have understood and appreciated them, and voluntarily undertakes to work under those conditions and to expose himself to those dangers, cannot recover against his employer for the resulting injuries." It is true, as was said by this court in Blumenthal v. Craig, 81 Fed. 320, 26 C. C. A. 427, that a defect in a machine, and the risk of operating it when defective, are not necessarily the same, and that the risk may not be obvious, although the defect may be. Or, as it is put by Mr. Justice Moody in the case referred to:

[Even] "where the elements and combinations out of which the danger aris-- es are visible, it cannot always be said that the danger itself is so apparent that the employé must be held, as a matter of law, to understand, appreciate, and assume the risk of it. * * * The visible conditions may have been of recent origin, and the danger arising from them may have been obscure. In such cases, and perhaps others that could be stated, the question of the assumption of the risk is plainly for the jury. But where the conditions are constant and of long standing [as he takes pains to add], and the danger is one that is suggested by the common knowledge which all possess, and both the conditions and the dangers are obvious to the common understanding, and the employé is of full age, intelligence, and adequate experience, and all the elements of the problem appear without contradiction from the plaintiff's own evidence, the question becomes one of law for the decision of the court."

Commenting upon the facts by which the case was brought within the latter class, it is further said:

"The plaintiff was a person of mature years, intelligence, and of adequate experience. She had worked for some months upon this particular machine, and during that time it ,was always in exactly the same condition in which· it was upon the day of ʹthe injury. The elements out of which the danger arose were plainly visible to her. The employer had no duty, statutory or otherwise, to use a rail to guard against so obvious a danger as that arising out of two cylinders in contact with each other and seen to be revolving in- wardly. * * * We see nothing in the manner of the adjustment of the guard rail which constituted an allurement or was calculated to blind the plaintiff to the danger. The adjustment of the parts of the machine was continually before her eyes. The danger of being drawn between the cylinder and the rollers by contact with the cylinder was illustrated to her every min- ute of the day by the drawing in of the clothes to be ironed by contact with the revolving cylinder. The distance between the guard rail and the feed board was constant, and its relation to the thickness of her hand was ap- parent. She must have understood that if her hand became inextricably en- tangled with the clothes, as seems from the rather vague testimony of the plaintiff was the case here, it would be drawn between the cylinder and receive the injuries which unhappily occurred. We think that it must be said, as a matter of law, that she voluntarily assumed the risk of the danger."

All this is of peculiar pertinence to the case in hand. The plaintiff, here as there, was a person of mature age and abundant experience, having worked at this machine for nearly a month. There was nothing intricate or obscure either in its mechanism or mode of operation, and the danger from the inwardly revolving cylinders or rolls, if her hand

got near enough to be caught by them, was obvious to a person of the most ordinary intelligence. She could not feed the material into them as she did from day to day and not know it. That there was no means to stop or reverse the machine handy to the operator was also manifest, which she had stopped and started the machine too many times not to observe. Neither, of course, was there any of the other appliances of which evidence was given. Except as to the guard bar which had been taken off to be fixed, the machine, at the time of the accident, was in the same condition as it had been right under her eyes from the start. She may now realize from having seen others that it could have been made safer had it been differently equipped. But that is not to the point. The question is as to the condition and safety of this machine; and having operated it long enough to be acquainted with its defects, if any, she must be regarded as having been content with it as it stood, except as to latent dangers, of which there is no evidence, and except, also, as upon the occasion in question, she worked on without a guard rail while it was away being fixed, resting on the assurance with regard to it which had been given.

Notwithstanding this, however, evidence was received of different styles of mangles which were said to be in use in certain other establishments, which not only had means for cutting off and turning on or reversing the power in the way suggested, but were also equipped with other safety contrivances, such as a moving apron to feed in the fabrics to be calendered, means by which the guard rail could be made to rise and let the operator extract her hand in case it was caught, and the like. This evidence was entirely aside from the case, and should not have been received. Its admitted purpose was to show that there were machines in use which by reason of these appliances were safer than the one on which the defendant was injured. But the employer is not an insurer, and the duty imposed upon him is not to furnish the safest or newest and best machines and appliances, but only to exercise due care to provide those which are reasonably free from danger. 20 Am. & Eng. Encycl. Law (2d Ed.) 76; 26 Cyc. 1102; Washington & Georgetown R. R. v. McDade, 135 U. S. 554, 10 Sup. Ct. 1044, 34 L. Ed. 235; Patton v. Texas & Pacific R. R., 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361; McDonald v. Standard Oil Co., 69 N. J. Law, 445, 55 Atl. 289; Kehler v. Schwenk, 144 Pa. 348, 22 Atl. 910, 13 L. R. A. 374, 27 Am. St. Rep. 633. And the rule as to this is the usage of the business, negligence not being imputable where the machinery in question is that which is generally employed. Higgins v. Fanning, 195 Pa. 599, 46 Atl. 102. It may be that, for the purpose of comparison, it would be admissible, in order to aid the jury in determining what is reasonably safe, to put other machines in evidence, which are in common and ordinary use in similar establishments. It is so held in several well-considered cases. Wheeler v. Wasson Mfg. Co., 135 Mass. 294; Myers v. Hudson Iron Co., 150 Mass. 125, 22 N. E. 631, 15 Am. St. Rep. 176; Dolan v. Cotton Mills, 185 Mass. 576, 70 N. E. 1025; Nadau v. White River Lumber Co., 76 Wis. 120, 43 N. W. 1135, 20 Am. St. Rep. 29; Jones v. Railroad, 178 Mo. 528, 77 S. W. 890, 101 Am. St. Rep. 434. Although there are others, of equal authority, where it is held not; the

cases even in the same jurisdiction not being altogether in harmony. Rooney v. Cordage Co., 161 Mass. 153, 36 N. E. 789; Ross v. Pearson Cordage Co., 164 Mass. 257, 41 N. E. 284, 49 Am. St. Rep. 459; Propsom v. Leatham, 80 Wis. 608, 50 N. W. 586; Carr v. American Locomotive Works, 26 R. I. 180, 58 Atl. 678; Wood v. Heiges, 83 Md. 257, 34 Atl. 872; Gravadahl v. Chicago Refining Co., 85 Ill. App. 342; Sisco v. Lehigh & Hudson R. R., 145 N. Y. 296, 300, 39 N. E. 958; Jacobson v. Cornelius, 52 Hun, 377, 5 N. Y. Supp. 306; Richmond Locomotive Works v. Ford, 94 Va. 627, 27 S. E. 509; Parlett v. Dunn, 102 Va. 459, 46 S. E. 467; McGovern v. Smith, 73 Vt. 52, 50 Atl. 549; Couch v. Watson Coal Co., 46 Iowa, 17; Bryce v. Burlington, etc., R. R., 119 Iowa, 274, 93 N. W. 275. It is justified in some of the authorities on the ground that, the conduct of the master being on trial, it is proper for the jury to know what appliances are in common use in the particular business involved. Jones v. Railroad, 178 Mo. 528, 77 S. W. 890, 101 Am. St. Rep. 434. And, confined to common usage, the objection to it is largely removed. But that cannot be said of indiscriminate evidence as to what is used in different individual establishments, here and there, not limited to the time of the accident, such as was introduced here. The vice of this is that the jury will always select as the standard the newest and best, to which the master will thus be held, in the face of the rule that this is not required of him.

But the question of the admissibility of evidence of other machines in common use does not arise here, and need not be decided. Whatever be the correct rule in that regard, it was clearly out of course to allow proof, as was done, of other machines having safety appliances such as have been referred to, none of which were in issue, thus getting before the jury that which was immaterial and altogether aside from the case. As already pointed out, the plaintiff, having accepted the machine as it stood, without any such appliances, the effect of which was manifest, is now precluded from setting this up, the sole inquiry being whether the mangle, deprived of the guard bar to which she had been accustomed, was reasonably safe to operate, and if not, whether the plaintiff, as she claims, had the assurance from Lehman, representing the defendant and authorized to speak for him, to work on as she did, and whether, at the time of the accident, 24 hours after the guard bar had been removed, she had the right to rely on it. This was called to the court's attention by the defendant's eighth request, that:

"The risk of injury from the absence of the guard rail under the facts proved was assumed by the plaintiff, and the jury must find that the defendant is under no liability, because of the absence of it, unless they believe both that (a) the defendant, or some one expressly or impliedly authorized by the defendant so to do, had promised to replace the guard rail, and (b) that the plaintiff continued to operate the machine in reliance on that promise."

Or, as stated in the tenth request:

"If the jury believe that no promise to replace the guard rail was made to the plaintiff by the defendant or some one expressly or impliedly authorized to do so, they must find for the defendant."

This was a correct statement of the law, and should have been affirmed, and there was nothing in the general charge to take the place of it.

There also should have been an affirmance of the sixth point, to the effect that the defendant was not required to provide reversing mechanism on the mangle, because the risk of injury from the lack of it was a perfectly obvious one, which she was conclusively presumed to have assumed by continuing to operate the machine without complaint without it. This last instruction was of the highest importance to the defendant in view of the evidence which had been received with regard to the use of such reversing mechanism on other machines, and was the only possible way of doing away with the effect of it, if, indeed, it could be said to do so. But instead of this, the court not only refused the point, but expressly charged that, in deciding whether the machine in controversy was a reasonably safe one, the jury might consider the character of other machines in use, at the time of the accident, in other places (not those in general or common use, be it noted), and particularly that the machine on which the defendant was working had nothing by which it could be thrown out of gear, to be reached by the hand or foot of the operator, when standing at the middle of the machine. This disregarded the real issue in the case, and diverted the attention to that which was not involved in it, allowing a recovery upon an altogether incorrect and improper basis.

This case has been tried four times; twice in the state court (62 Atl. 1009, and 64 Atl. 970), where the action was discontinued, because, as frankly stated by the plaintiff's counsel, he did not like the law laid down to him; and twice in the court below, the first verdict having been set aside on the ground that the plaintiff by her own testimony assumed the risk of working without a guard rail, the promise made to her being that it would be returned in a few minutes, and the accident having occurred the next day after dinner—Andrecsik v. New Jersey Tube Co., 73 N. J. Law, 664, 63 Atl. 719, 4 L. R. A. (N. S.) 913, being cited. We regret that the case must go back and be tried again, but we see no escape from it, the errors committed being vital; the point on which the case turns, and on which a recovery can alone be had, being declared to be immaterial, and the jury's attention being thus diverted from instead of being directed to it, and the verdict being thus made to rest on grounds upon which it cannot be sustained. The most that we can do for the plaintiff is not to make the present judgment final, the views expressed by the court below in granting a new trial, if correct, coupled with what has been said above, leaving very little, if anything, on which to recover. Without, however, going that far, and giving the plaintiff another opportunity to make out a case if she can:

The judgment is reversed, and a venire facias de novo is awarded.