ERRICO v. WASHBURN WILLIAMS CO.

(Circuit Court, M. D. Pennsylvania.   May 29, 1909.)

No. 141, June Term, 1908.

MASTER AND SERVANT (§ 217*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—
ASSUMPTION OF RISK.

A defect in a machine and the danger from it are not necessarily to be identified, and an employé may know of the one without appreciating the other; but where both were plainly visible and apparent, and the employé injured was of mature age and average intelligence, and familiar with the use of the machine, which was not complicated, and continued to use it without complaint, he must be conclusively presumed to have assumed the risk, and cannot recover from the master for the injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–600; Dec. Dig. § 217.*]

At Law.   On motion by defendant for judgment non obstante veredicto.

E. N. Willard and F. R. Stocker, for the rule.
M. J. Martin, contra, opposed.

ARCHBALD, District Judge.   The jury gave a verdict for $500, a mere pittance, to the plaintiff for the loss of his fingers, if the defendants were really liable.   It was evidently a compromise between judgment and sympathy.   They recognized that the plaintiff had only himself to blame for the accident, but they did not like to have him go without something.   The court, however, cannot deal with the case so complacently, but must dispose of it without regard to the consequences.

The plaintiff's fingers were cut off by the revolving knives of a machine, called a "joiner," at which he was working.   That it was not reasonably safe without a guard bar, which it did not have, is established by the verdict; and, considering that one of the jurymen was an agent for such machines, we may unhesitatingly take their word for it.   We may also assume that, although the plaintiff ordinarily worked in an entirely different department of the shop, he was not out of place, having been ordered by his foreman, as he says, to make use of the machine when he had to plane or straighten the different parts of the windows and doors which he was putting together. There is some pretty positive evidence to the contrary—that he was told to keep away from the machine, where he had no business, and warned against the very thing that happened; but that was for the jury.   But whether there by right or by wrong, if the danger from the want of a guard bar was obvious, having used the machine, as

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

he had, on an average of twice a week for over two years without complaint of the defect or having assurance that it would be remedied, he assumed the risk, and must take the consequences.

A defect and the danger from it are not necessarily to be identified, and a person may know of the one without appreciating the other. Blumenthal v. Craig, 81 Fed. 320, 26 C. C. A. 427; Haines v. Spencer (C. C. A.) 167 Fed. 266. He may know, for example, that a machine is not provided with safety appliances such as others that he has seen of a similar character; or he may realize, as a matter of independent judgment, that with certain things supplied the machine would be safer and is not reasonably safe without them; and yet he may not fully understand all that is involved in the lack of these. But where the defect and the danger from it are plainly visible, and the person injured, being of mature age and ordinary intelligence, is perfectly familiar with the operation of the machine, which is not complicated, if he keeps on without complaint, he is conclusively presumed to be content with it as it stands, and to have assumed the risk, whatever it may be; and if he is injured under such circumstances the law affords him no remedy.

In the present instance, the machine consisted of a divided or double table, the one section nearest the operator being slightly lower than the other, and along this the material to be cut or planed was shoved against the knives, which extended transversely to it, between it and the other or upper section. These knives revolved at a high rate of speed, and were arranged to shave off the material which was moved forward by hand into them. On the left side was a gauge, which was designed to be shoved over, according to the width of the material, and serve as a guide for it, incidentally covering, and protecting at the same time, so much of the knives from contact with anything. There was, in addition, in some establishments, a guard bar, consisting of a flat pin of wood or iron, which was bolted to the table and could be swung over on its pivot, to cover the remaining portion of the knives; the double arrangement leaving only enough of them exposed to cut the particular piece of material being operated on. It was the lack of a guard bar of this character that the plaintiff complains of. It is not clear that it would have prevented the accident, it being his left hand that was injured; but it is not necessary to dwell upon that feature.

Complaint is also made that the plaintiff was not instructed in the use of the machine. But by his own statement, as already pointed out, he had used the machine for the very same purpose twice a week for upwards of two years, and it is idle to suggest, after that, that he was not familiar with its ordinary working. That there was nothing to protect the knives, which were exposed, in plain view, without guard or cover, was, of course, obvious. The gauge or guide on the left side could be shoved over as a protection for a part of them, although the plaintiff did not see fit to avail himself of that expedient. The exact condition of the machine was thus perfectly well known to him, and so, of necessity, was the danger. Every time he used the machine it was made plain to him that the knives would cut into bits whatever came in contact with them. That, indeed, was

what they were there for, and it is impossible to resist the conclusion that his fingers were cut off because he did not pay heed to this.

But, aside from that, the danger from naked knives such as these was too open and obvious for the plaintiff to say that he did not appreciate it. There was nothing latent or hidden about it. It lay on the surface. It was as plain to the plaintiff that his fingers would be cut off if he did not keep them away from the knives as that they would be burned if he put them into the fire. Having made no complaint, therefore, of the unguarded condition of the knives, in continuing to use the machine in that shape he assumed the risk, and is now bound by it. "Where the conditions are constant and of long standing," says Mr. Justice Moody, in Butler v. Frazee, 211 U. S. 459, 467, 29 Sup. Ct. 136, 138, 53 L. Ed. ——, "and the danger is one that is suggested by the common knowledge which all possess, if both the conditions and the dangers are obvious to the common understanding, and the employé is of full age, intelligence, and adequate experience, and all these elements of the problem appear without contradiction from the plaintiff's own evidence, the question becomes one of law for the decision of the court. Upon such a state of the evidence a verdict for the plaintiff cannot be sustained, and it is the duty of the judge presiding at the trial to instruct the jury accordingly."

Applying this to the case in hand, the jury on the uncontradicted evidence should have been told to find a verdict for the defendants; and, a point to that effect having been presented and reserved, the case must now be disposed of in the same way as if this course had been taken.

Judgment is directed to be entered non obstante veredicto in favor of the defendants.