MYLER v. STANDARD LIFE & ACCIDENT INS. CO.

(Circuit Court of Appeals, Third Circuit. January 30, 1899.)

No. 41, September Term, 1898.

INSURANCE—ACCIDENTAL DEATH OF ASSURED—EVIDENCE—QUESTION FOR JURY.
 In an action on an accident policy exempting insurer from liability for
 an accident to assured while getting on or off a moving conveyance using
 steam as a motor, or walking or being on the roadbed of any railroad, etc.,
 defendant's evidence tended to show that deceased was killed while at-
 tempting to board a freight train, while plaintiff offered evidence from
 which it appeared that deceased intended to take a train going in the op-
 posite direction from that of the freight, and that it was impossible for
 deceased to have boarded the freight train as testified to by defendant's
 witnesses, testimony of some of whom was contradicted. *Held*, that the
 manner of decedent's death was for the jury, and that a peremptory in-
 struction for defendant was error.

In Error to the Circuit Court of the United States for the Western
District of Pennsylvania.

Louis McMullen, for plaintiff in error.
Wm. W. Wishart, for defendant in error.

Before DALLAS, Circuit Judge, and BUTLER and KIRKPAT-
RICK, District Judges.

KIRKPATRICK, District Judge. The action in this case was be-
gun by Anna May Myler to recover from the Standard Life & Acci-
dent Insurance Company the sum of $5,000 upon a policy issued by
said company to J. T. Myler, insuring him for the term of 12 calen-
dar months from March 18, 1895, against loss of time, not exceeding
52 consecutive weeks, resulting from bodily injuries caused solely,
during the term of insurance, by external, violent, and accidental
means; or, if death result from such injuries alone within 90 days,
it was agreed that they would pay to Anna May Myler, the plaintiff
herein, the sum of $5,000. On January 13, 1896, while the policy was
still in force, the insured, J. T. Myler, met with an accident in the
station of the Pittsburgh, Ft. Wayne & Chicago Railroad at Fed-
eral street, from the effect of which he died the next day.

The policy of insurance contained this condition:

"This insurance does not cover * * * death * * * resulting wholly
or partly, directly or indirectly, from any of the following causes, conditions,
or acts or happenings, where the assured is affected by or is under the influ-
ence of any such cause, condition, or act, viz.: * * * Getting on or off a
moving conveyance using steam as a motor, * * * or walking or being
on the roadbed * * * of any railway; * * * violation of law; * * *
unnecessary exposure to danger."

Upon the trial of the cause the plaintiff offered testimony tending
to show that it was the intention of the deceased, on the day in
question, to go to a small town, called "Glenfield," on the Ft. Wayne
road, by the train known as the "Alliance Accommodation," which
left the Federal street station in Pittsburg at 4:23 p. m., and that
after this train had pulled out of the station, going westward, and
when the engine and several cars of a freight train going eastward
had passed the point, the body of Myler was seen lying between the

east and west bound tracks, with his head towards the westward, and his body straight with the rail; that Myler's body, when first seen, was being struck by the trucks of the passing freight cars; and that, from the effect of the injuries so sustained, Myler died on the morning of January 14, 1896. The execution of the policy of insurance having been admitted, the plaintiff rested her case. A motion for compulsory nonsuit was made and denied. The defendant then offered testimony tending to show that a person answering the description of the deceased had boarded the freight train going eastward when it was at Marion avenue, which is some 1,200 feet westward of the Federal street station, and that as the freight train approached the Federal street station a man was seen attempting to alight therefrom, and that in so doing he fell upon the ground between the east and west bound tracks; that this man was J. T. Myler; and that the injuries which he received were consequent upon, and due to, his attempt to alight from a moving train, contrary to the provision of the policy. It was also testified to by one of the defendant's witnesses (a doctor) that the deceased, prior to his death, admitted that he had sustained his injuries while alighting from the moving freight train. In rebuttal, witnesses were called on behalf of the plaintiff whose testimony tended to modify or contradict the doctor's statement as to deceased's statement of cause of injury; and one Snyder testified that he saw the deceased on Federal street after the Alliance accommodation had passed into the station, and half a minute only before its time for leaving for the West; that he spoke to Myler, and that he told him that he had no time to lose, and saw him hurrying to catch the train; and that within three minutes thereafter he heard of his having been crushed by the train. It was in evidence that the engines of the freight train and the Alliance accommodation passed each other 30 or 40 feet to the eastward of Marion street, and that the freight train was moving about 5 or 6 miles an hour.

In his charge to the jury, the learned judge said that the question at issue was one of fact, and that fact was what was the cause of Mr. Myler's injury; and after calling attention to the failure on the part of the plaintiff to offer any testimony on that point, and reviewing the testimony of the witnesses offered on the part of the defendant who claimed to be eyewitnesses of the occurrence, and asserting that to him they seemed to be disinterested, and their testimony not to be disregarded, the learned judge added, "Their credibility is, of course, for the jury." Subsequently the court delivered a supplemental charge, in which it again called the attention of the jury to the facts, and, referring specifically to the testimony of Snyder, said that, in the judgment of the court, there was no inconsistency between it and that of the witnesses for the defendant, but reiterated the assertion that the facts were for the jury, as well as the credibility of the witnesses. The jury failed to agree upon a verdict, and on the third day the court recalled them, and said:

"Upon reflection, I have concluded to relieve you from the further consideration of this case, and from responsibility for the result, by giving you a binding direction. I therefore withdraw my previous instructions, in so far

as they are inconsistent with what I am about to observe, and now say to you that there is no conflict of evidence with respect to the cause of the accident to the insured which resulted in his death, and said cause was not a risk insured against by the policy in suit. Hence I instruct you that, under the pleadings and evidence, the verdict should be for the defendant."

To this instruction the plaintiff's counsel excepted.

The question before this court is, was there error? It will be observed that in the original charge of the court the jury was instructed that there was a question of fact at issue, which it was for them to determine from the evidence; that the duty of the jury was to consider the evidence as given by the several witnesses, and that the weight to be attached to the testimony was for them alone; and that while the court saw no reason to reject the testimony of Carr, Doran, and Van Divender, who claimed to be eyewitnesses, yet the views of the court on that subject should not be controlling on the minds of the jurors. We are of the opinion that the learned judge in his original and first supplemental charge to the jury correctly stated the law applicable to the case at bar, and that, in so far as he modified those instructions by directing a verdict for the defendant, he fell into error. In the case of Navigation Co. v. Evans, 176 Pa. St. 28, 34 Atl. 999, the question raised in this appeal was considered; and the court quoted with approval the case of Reel v. Elder, 62 Pa. St. 316, where Sharswood, J., delivering the opinion of the court, said:

"However clear and indisputable may be the proofs, where it depends upon oral testimony, it is nevertheless the province of the jury to decide, under instructions of the court as to the law applicable to the facts, and subject to the salutary power of the court to award a new trial if it should deem the verdict contrary to the weight of the evidence."

And in Grambs v. Lynch, 20 Wkly. Notes Cas. 378, where the supreme court of Pennsylvania held that the question of the credibility of witnesses could not be taken away from the jury, and that "where a case depends upon oral testimony, though uncontradicted, such testimony must be submitted to the jury."

A careful review of the testimony satisfies us that there was a question of fact to be submitted to the jury, relating to the cause of the injury. The reasonable inference deducible from the facts presented by the plaintiff, and supported by competent proof, is that the deceased left his office to take the Alliance accommodation at Federal street for a point west. The testimony of Max Snyder tends to show that he met the deceased on the way to the station, and accompanied him to within a block of the same; that he sought to have a conversation with deceased, when he said, "I have not got much time. I want to catch this train;" that he (Snyder) pulled out his watch, and said, "You have only half a minute, if you want to make it;" that he separated from the deceased, and in two or three minutes afterwards he heard of his accident. Without going further into the details of Snyder's testimony, it is apparent that, if believed, it establishes the fact that it was impossible for the deceased to have been at Marion avenue, and boarded the freight train there, and, when taken in connection with certain indisputable facts in the case, almost, if not quite, establishes that the deceased was not on

the freight train, as the witnesses who described the accident testified. From the point where Snyder places the deceased on Federal street to Marion avenue, where the defendant sought to show that the deceased boarded the freight train, is, by the shortest route, 1,100 feet. That the deceased could not, on leaving Snyder at the time fixed by him, have reached Marion avenue crossing in time to board the freight train, seems to be conceded by defendant's counsel, who have on the argument advanced other theories to account for the way in which deceased got on the freight train; but all are apparently inconsistent with the testimony of their own witnesses. It would seem, therefore, that in the path to defendant's direct proofs, explanatory and descriptive of the accident, the plaintiff, by competent evidence, interposes the obstacle of great improbability, if not of actual impossibility, and that there was thus presented for the consideration of the jury a substantial issue or controversy as to the reliability of defendant's proofs and the credibility of its witnesses. There is also evidence on the part of the plaintiff which bears directly upon the credibility of certain of the witnesses called by the defendant. The testimony of Muckle, McPherson, and Horner tends to show that there was no one on the station platform at the time Doran and Van Divender (two of defendant's witnesses who describe the accident) say they were there; and the testimony of Crane, who says he was present constantly, and in a position to hear all deceased said, and that of Turner and Thomas Coslin, tend to challenge the defendant's proof that the deceased, while at the station, declared that he got hurt while alighting from the freight train. It is manifest that the plaintiff's case, if her witnesses are credited, afforded ground for legitimate inferences adverse to the credibility of the witnesses depended on by the defendant, and there was some direct testimony tending to discredit them. Thus, a substantial issue as to their credibility was raised, which it was the province of the jury to determine. "The jury are the judges of the credibility of the witnesses, and it is not in the province of the court to defeat their verdict upon the theory that they should have believed differently." Fulton v. Lancaster Co. (Pa. Sup.) 29 Atl. 763.

We are of the opinion that the court erred in giving binding instructions to the jury to find a verdict for the defendant. The record should be remitted, with instructions to the circuit court to award a new trial.