[No. 5951.]

RICE v. VAN WHY.

1. **Pleadings—Verification of Amendment—**That the original
complaint is verified does not render it necessary that an amend-
ment thereto shall be sworn.—(12)

2. **Interlocutory Orders—Not Res Judicata—**An order strik-
ing out particular averments from a complaint is not final,
and does not preclude the allowance, in the discretion of the
court, of the filing of an amended complaint containing the same
averments.—(14, 15)

3. **Courts—Change of Judge Pending the Cause—**A judge
who has committed error in directing an averment to be stricken

from the complaint may, while the cause is still in paper, correct such error; and another judge sitting in the place of the first may, in like manner, correct the errors of his predecessor.—(15)

4. **Pleadings—Amendments**—The action of the lower court in allowing an amendment of the pleadings will not be reviewed unless injustice, or a clear abuse of discretion, is shown.—(18)

5. **Appeals—Law of the Case**—Where upon appeal, in an action against the master for negligence in providing for the use of the servant a defective and dangerous machine, the opinions of experts are held incompetent and inadmissible, it necessarily becomes the law of the case that evidence as to the custom or common use in the community, as to the appliances used in like employments, is competent and admissible.—(19-21)

6. **Negligence — Custom or Usage —** Upon the question whether the master in the appliances provided for the use of the servant has exercised reasonable care for the servant's safety, the custom or general practice of other employers in the same line of employment, in the same community, is admissible. Comparison of the master's appliances with some particular method or appliance should not be permitted. The comparison must be limited to common usage.—(26)

7. **Master and Servant—Master's Appliances**—That a hoist is a complete piece of mechanism properly constructed, and has often been used safely, does not necessarily make it such a machine as the master is under duty to provide. If, in order to make it reasonably safe, a particular appliance is necessary, it is the duty of the master to supply it, and the right of the servant to have it; and the master is not to escape liability for his default because, by possibility, the appliance might not have been used or might have proved ineffectual.—(31)

8. **Partnership — Liability for Negligence — Death of Partner—**Mining partners whose negligence in the matter of the appliances used occasions the death of a servant are liable jointly and severally. If sued in one action, the death of one partner does not work an abatement, nor render an amendment of the complaint, or a supplemental complaint, necessary. The suit may proceed to judgment against the survivor.—(33)

9. **Parties—Joinder of Parties**—Upon the death of one of two defendants sued as partners, the personal representative of the deceased cannot be joined with the survivor.—(33)

10. **Negligence — Question for Jury —** Whether a common miner, unacquainted with machinery, who works underground, and who has been so employed for only seven or eight days,

had assumed the risk of injury from alleged defects in the hoist, which was located at a distance from the shaft, and with the operation of which he had nothing to do, is for the jury.—(35, 36)

11. **Master and Servant—Servant's Assumption of Risk—** the servant cannot be declared to have assumed the risk of injury from a defective appliance, unless he knew, or by the exercise of ordinary care and circumspection ought to have known, not only the defect, but the danger.—(36)

12. **Instructions — Question Not in Issue —** An instruction directed to and negativing what is not contended for by the opposing party is properly refused.—(40)

13. **Appeals—Harmless Error—**The refusal of an instruction which cannot have affected the result, is harmless.—(40)

*Appeal from Teller District Court* — Hon. LOUIS W. CUNNINGHAM, Judge.

This is an action by Mrs. W. A. Van Why, begun December 5, 1899, in the district court of Teller county, to recover $5,000.00 from D. H. Rice and W. R. Coe, co-partners under the firm name and style of The Joe Dandy Gold Mining Company, engaged in operating and developing the Joe Dandy lode mining claim in the Cripple Creek District, for the death of her husband, which occurred while employed by the defendants in that work, through, as is said, their negligence in failing to supply a proper and reasonably safe hoist on the property, for use by the employees, while mining in a shaft thereon. The accident, which resulted in the death of Van Why, occurred October 28, 1899. The case has already been here once for review, from a judgment for plaintiff for the full amount of her claim. That judgment was reversed and the cause remanded for a new trial. Such trial was had in January, 1906, resulting again in a verdict and judgment for plaintiff for $5,000.00 against D. H. Rice alone, his co-partner and co-defendant, W. R. Coe, having meanwhile died. It is to review this judgment that the defendant Rice brings the case here again on appeal.

The shaft in which the accident occurred had been sunk to a depth of about one hundred and fifteen feet, and the work then in operation consisted in sinking it deeper, with a shift of three men, one of whom at this time was Van Why. The shaft was worked by means of a bucket, raised and lowered by the engine and hoist situated in an engine-room at the surface, located some forty feet from the mouth of the shaft. The power operating the hoist was communicated primarily to a short shaft at the rear of the hoist, at one end of which was a small gear or pinion wheel which worked the larger gear wheel attached to the drum, on which was wound the cable by which the bucket was raised and lowered. The engine was controlled by means of a lever, by which, when it was desired to stop the bucket at any point in the shaft, the piston was "centered," so that the force of the steam acting equally and simultaneously upon each side of the piston, held the machinery fast. The hoist was further controlled by a shoe-brake, operated by the same lever, which locked the main wheels attached to the same shaft, upon which was the small gear or pinion wheel, so that, when the engine was "centered," and the shoe-brake applied, the shaft to which the small gear wheel was attached became immovable, thereby also rendering the gear wheel immovable and holding the drum stationary. The small gear or pinion was attached to the shaft by means of a key driven into grooves cut into the shaft and the small pinion. On the day of the accident the deceased and two other men, composing his shift, had been engaged up to a few minutes before the accident in drilling holes in the bottom of the shaft, preparatory to placing blasts therein. The holes were loaded, fuse inserted and lighted by Van Why and his co-worker, one Stewart, both of whom then got into the bucket, and gave the

signal to hoist. They were hoisted about half-way to the surface, when the key locking the gear or pinion wheel on the main shaft became unseated, leaving the pinion loose upon the shaft and releasing the drum from the control of the lever shoe-brake, by reason of which the bucket containing Van Why and his companion fell to the bottom of the shaft, and either the exploding blasts, or the fall, killed them, and their bodies were partially buried beneath the debris at the bottom. Except as above noted, the hoist in question had no safety band, band brake, friction clutches, or other safety appliances whatsoever. The testimony shows that a band or friction brake could have been easily and readily attached to the hoist as constructed.

The theory upon which plaintiff sought to recover in this case, and upon which she did in fact prevail, is stated in the following allegation of the first paragraph of her second amended complaint, upon which pleading issue was joined and the case tried:

"That said plant of hoisting machinery, apparatus and appliances was not such as was in common use by mining companies or persons engaged in mining, and was unsafe, defective, dangerous and insufficient, for the reason that the same was an old, weak and patched-up machine and was not provided with safety bands, brakes, clutches or other frictional appliances to guide and govern the said drum while in operation; but the defendants, with full knowledge of the dangerous, defective and unsafe character and condition of said hoisting plant and appliances, carelessly and negligently furnished the same for use by its employees, and negligently and carelessly failed to keep said hoisting plant, apparatus and appliances in proper and necessary repair."

From the testimony, the hoist appears to have

been complete in itself. Negligence on the part of the defendants cannot be predicated alone on the fact that the key in question came out, and left the drum loose and uncontrollable, and thus permitted the bucket to descend the shaft, as there is no proof to establish it. How or why the key came out, the record fails to disclose, and that matter still remains unexplained. So that the main ground upon which a recovery may be based is that the hoist furnished was not a reasonably safe piece of machinery, in and of itself, for the purpose for which it was furnished, intended and in fact used, because it had no safety band, brake, clutch or other frictional appliance to guide and govern the drum upon which was wound the cable attached to the bucket, and that such unfitness was the direct or a contributing cause of the injury.

Mr. C. W. WATERMAN for appellant.

Mr. W. O. TEMPLE and Messrs. CRUMP & ALLEN for appellee.

Mr. JUSTICE BAILEY delivered the opinion of the court:

The first point urged for reversal is that the second amended complaint, upon which issue was joined and trial had, was not verified, and was therefore a nullity, because the original complaint was verified, as were the original answer and replication. This amended complaint was without verification. The objection is that it is a nullity, since, under the code, as the original complaint was verified, all subsequent pleadings must be. This objection is not good. Plaintiff, by filing an unverified amended complaint, waived verification of all subsequent pleadings, as she might well do, without violation of the code requirement. 'Subsequent pleadings,' as

used in the code, mean subsequent in logical se-
quence, or order of pleading, not subsequent in time.
The fact that plaintiff verified her original complaint
gave defendant no legal right to insist that she verify
a new statement of her cause of action in an amended
complaint. It means simply that, where a prior
pleading is verified, any subsequent pleading respon-
sive thereto, other than a demurrer, shall also be
verified. If, for example, plaintiff, upon her orig-
inal verified complaint, had been, for some technical
reason, put out of court, it would be equally logical
to contend that, upon bringing her suit anew she
could only do so by verified complaint. No one will,
we apprehend, contend for such a rule.

In support of their position, counsel have cited
no authority that even suggests that, where a plain-
tiff states again his cause of action, by way of an
amended complaint, such amended pleading must be
verified because the original was. All the decisions
offered by them simply announce the rule, about
which there is no controversy, that a pleading respon-
sive to a prior verified one must itself be verified.

The case of *Hempstead v. Hempstead*, 7 How-
ard's Practice Reports, cited by appellee, is in point.
There objection was made to the filing of an amended
unverified complaint, the original complaint having
been. In commenting upon the objection, the court
said:

"It was not necessary to verify the amended
complaint. 'Subsequent pleading,' in section 156 of
the code, means subsequent in the order of pleading;
not subsequent in time. It applies only to pleadings
in answer to the pleading verified, or to those which
follow in the order of pleading."

This conclusion appears so sound in point of rea-
son and logic that further discussion is unnecessary.
To compel a plaintiff to verify an amended com-

plaint, contrary to his desire, is against the manifest spirit of the code. The purpose of the requirement is to enable a party, by verifying his own pleading, to compel his adversary to plead truthfully, by responding thereto under the restraint of an oath. This privilege may be waived by either party.

The next point urged for reversal is that, on June 16, 1901, a motion was sustained by the then judge, to strike from the original complaint the allegations thereof to the effect that the hoist in question was unprovided with safety bands, brakes and clutches, to guide and govern its drum when at work and in operation, as being irrelevant, incompetent and immaterial, since other allegations of the complaint show conclusively, as is said, that the sole proximate cause of the accident was the falling out of the key which locked the small pinion wheel to the main shaft of the hoist. That afterwards, and on July 9, 1901, by leave of court first had, another judge then sitting, the amended complaint on which trial was had over defendant's objection was allowed to be filed, containing in substance the allegations which had been theretofore stricken. A like motion was again interposed on July 17, 1901, to strike these allegations from the amended complaint. The contention is that the original ruling is *res judicata;* that it is not competent for one judge of concurrent jurisdiction to review prior rulings, and, in effect, set aside orders of a co-ordinate judge, and particularly after the expiration of six months after the lapse of the term at which such rulings were made.

Appellant says the original ruling and order on the motion is a final judgment, and fixes the law on that point until overruled by a court of review. The leave given was to file an amended complaint; then followed the motion to strike those matters there-

from, repleaded substantially as in the original complaint. Whether the amended complaint should be filed was a matter fairly discretionary with the judge to whom the application was made. While, in view of all the facts disclosed, we are not disposed to unqualifiedly approve the practice indulged, still we do not regard that order, in the circumstances of the case, as properly reviewable. The court's action finds support in general authority, and as well in our decisions.

It will scarcely be denied that the court, at any time before trial and final judgment, had the power, if convinced of error, to correct the same as it might be advised. The ruling on the motion to strike was not of such a final or conclusive character as to preclude the action taken, even after the expiration of the term. It was the same court acting at all times, and as such it clearly had this power, and might properly exercise it. The fact that a different judge was sitting worked no limitation upon the power and authority of the court. We doubt if it will be questioned that the judge who made the original order had the right, if exercised in apt time, to change his mind and withdraw or modify it, if advised, as matter of law, that such action was due the plaintiff. If this be true, and it seems reasonable, it follows that another judge, presiding over the same court, having like power and authority, might also properly make a like order.

In 15 Enc. Pl. & Pr., at pages 349-351, the law is stated thus:

"Orders are not regarded as *res judicata* with the same strictness as in the case of judgments. Accordingly, every order made in the progress of a cause may be rescinded or modified upon a proper case for such relief being made out. During the term at which the order was made this power of the

court is plenary and undoubted, and it has been held that the power exists and may be exercised åt any time, even after expiration of the term, provided the proceedings are still *in fieri,* and no final judgment or order has been entered putting the case out of court.''

In *Rockwell v. District Court,* 17 Colo. 118, this court, speaking to a question of like import, said:

''The second proposition rests upon a legal contention not noticed in the opinion heretofore filed. It is insisted that the ruling in the court below in quashing the first execution is *res judicata,* and that therefore this court cannot inquire whether error was committed in ruling upon the second execution which shared a similar fate. Counsel contend that the correctness of these judicial rulings could only be questioned by *certiorari* or by some other proper proceeding to review the order upon the first execution.

''The doctrine of *res judicata* is applicable only to those judgments, decrees, orders or rulings of record which are so far material and final that a review thereof may be had through the ordinary procedure provided, such as appeals or writs, of error. The granting or refusing of other applications or motions does not necessarily prevent a subsequent renewal thereof upon the same or different grounds where jurisdiction over the subject-matter remains in the same tribunal. A dignified and orderly procedure has undoubtedly prompted the recognition by courts of the rule forbidding repeated applications to rehear motions of the latter class on grounds previously urged. But this rule is not based upon the principle of *res judicata,* and the entertainment of such renewed applications is purely discretionary with the court. A proper respect for judicial announcements has led to the established practice of submit-

ting a preliminary petition to the court for leave to renew the motion denied. But the court itself may waive this rule of procedure; and if without objection it entertains the motion challenging its former ruling and reconsiders the same on the merits, its action will be treated as if such preliminary leave had been granted."

*Hagerman v. Moore,* 2 Col. App. 85, points out the test by which to determine what orders are final or interlocutory, in this pronouncement:

"It has been repeatedly adjudicated that under the act regulating appeals to the supreme court, a final judgment must be entered before there is any right to a review of the proceedings below. This judgment must be a final determination of the controversy between the parties. What comes within this definition is clearly expressed in the decisions on the subject. As was said in *Dusing v. Nelson,* 7 Colo. 134, 'If the order entered in a cause does not put an end to the question, but leaves something further to be done before the rights of the parties are determined, it is interlocutory and not final. To be final it must end the particular suit in which it is entered.' Formalities are not essential to a valid judgment entry, but if the forms usually adopted are not resorted to, there must be some equivalent expression which will indicate that the matter in controversy has been determined, and the entry must appear to be intended as the entry of a judgment.—*Higgins v. Brown et al.,* 6 Colo. 148; *Alvord et al. v. McGaughey,* 5 Colo. 244; *Stevens v. The Solid Muldoon Printing Co.,* 7 Colo. 86.

"The order entered in this case neither in form, nor in substance, approaches the definition of a final judgment as expressed by these authorities. It was an order entered on a motion, and neither adjudged the successful party his costs, nor permitted him

(2)

to depart from the court without day, under these circumstances, if this was the only question to be considered, it would be decisive of the present appeal.''

It seems, therefore, on reason and authority, that the original order striking certain amendments from the first complaint does not have the final and conclusive effect contended for.

The order assailed allowed an amended complaint to be filed, and must be considered in connection with the code provision providing for such amendments. That this is a matter resting in the discretion of the court, and will not be interfered with unless there has been a clear abuse thereof or an injustice done, neither of which appears here, is settled.—*Cascade Ice Co. v. Austin Bluff L. & W. Co.,* 23 Colo. 292; *Buddee v. Spangler,* 12 Colo. 216; *Duer v. McPhee,* 6 Colo. 174; *Horn v. Reitler,* 15 Colo. 316; *Klippel v. Oppenstein,* 8 Col. App. 187; *Gambrill v. Hotel Co.,* 11 Col. App. 529.

The case of *Heaton v. Myers,* 4 Colo. 69, relied upon by counsel for appellant, is an authority in support of the foregoing doctrine. At page 62 of the opinion, the court says:

''The fourth plea was twice amended. As first amended it was demurred to, and the demurrer sustained. As again amended, it was stricken from the files, upon the ground that it was but a repetition of the plea which it proposed to amend. A comparison of the two pleas shows the objection true in fact. There is no substantial difference between the plea as it stood, and the plea as amended; and it was entirely within the discretion of the court to strike such a plea from the files.''

This is precisely the condition contended for by appellee and is just what is now held on the question in dispute, nothing more, nothing less, simply that whether the amended complaint should be filed,

containing anew matters which had been stricken from the original complaint, was purely discretionary with the trial court.

The third point urged for reversal is that no negligence is shown. We now consider this contention, keeping in view the specific ground upon which plaintiff's right to recover rests. The negligence charged is that the hoisting plant complained of was not such as was in common use, and was unsafe, because of the absence of safety band brakes or other frictional appliances for use in emergencies, as the common practice was in the mining community where the accident occurred, and the injury was inflicted. That a cause of action is stated is not open to doubt. The master is bound to use appliances which are not defective in construction, though he is not bound to use such as are of the best, latest and most improved pattern. The charge is that this hoist is defective, and if so, then if injury was inflicted upon an employee as a direct result of such faulty construction, or with it as a contributing cause, the defendant is liable, unless he escape on the ground of assumption of risk, or for some other lawful reason. The question at issue was the reasonable safety of the hoist in use because of its manner of construction. Over the objection of defendant, plaintiff was allowed to show a common custom in the district, of using hoisting plants provided with band brakes, clutches, or frictional appliances. This is urged as error, as being an improper method to prove negligence. It is insisted that the question is, whether the particular machinery was, in and of itself, reasonably safe, without reference to other appliances, in common use in that community or elsewhere, for like purposes. After having introduced testimony descriptive of the plant, and the manner if its operation,

there remained but two methods by which to reach a conclusion as to whether the hoist in question was ordinarily and reasonably safe, either by opinion testimony or by testimony of common use. This court declared it error to admit the former kind, and reversed the first judgment for that, and other reasons. By so holding it in effect determined that the testimony of common usage was proper to be considered by the jury, not as conclusive upon the question, but as an aid, so far. as it might be such, to determine whether the hoist was reasonably safe.

At the former trial practically the same testimony as is here objected to was offered and received, over the objection of appellants. In a review of the record of that trial by this court, those objections were then fully urged, as they are now. That this court then considered that testimony competent appears by this statement from its opinion:

"Witnesses for plaintiff, after testifying to the nature and character of the hoisting plant and describing other hoisting machinery in common use in that district, and specifying minutely the difference between the two kinds, and explaining fully the construction and state of repair of this one, were asked by plaintiff's counsel if, in their opinion, it was reasonably safe and suitable for the purpose for which it was used, and they answered that it was unsafe and unfit."—33 Colo. 317.

It was ruled to be error to call for and get opinion testimony. It follows, by irresistible inference, since objection to the testimony of common use was urged, the court plainly was of opinion that testimony of the latter character was admissible, since its ruling, on these objections, is confined exclusively to the point that the admission of opinion testimony was erroneous.

Further on in its opinion this court says:

"So, here, the witnesses having testified to the condition of this hoisting plant, and to the fact that other hoisting plants in the same camp were supplied with band brakes, and the witnesses having also testified to the way in which the band brakes work and what their office is, and having fully described the appliances used in connection with defendants' plant for controlling the same, the jury was just as competent as the witnesses to say whether, under the facts, defendants' hoisting plant was reasonably safe."—33 Colo. 319.

By this statement its stamp of approval is placed upon that testimony, for it said that, from this testimony, the jury was as well qualified to say whether the hoisting plant was reasonably safe as were experts  It must have been competent and material testimony, and so adjudged by the court, else the jury would not be permitted to even consider, much less act upon it. Manifestly that decision settles the law of the case as to the admissibility of that testimony. The fair inference, indeed the only inference, therefrom, is that, had plaintiff rested upon it, and submitted the case without opinion testimony, in so far as the objection to the admission of testimony of common use goes, the first judgment would have been upheld.

From a careful inspection of the record of the former trial, and the opinion announced upon the reversal of that judgment, from which the foregoing quotations are taken, it must be concluded that this cause was remanded by the court for trial below, upon the precise theory, which was followed at the last trial. In other words, by a process of elimination, there being but two methods by which negligence could be shown, the one by opinion testimony, the other by testimony of common use, the former,

so far as applicable to this particular case, has been denied, and the latter approved.

This rule is well supported by authority. In 27 A. & E. Enc. of Law, 1st ed., at page 902, a conclusion fully upheld by cases there cited, it is said:

"When the question is whether or not there was want of due care in any particular case, evidence of usage is admissible to show what constitutes due care as applied to that particular case. 'Ordinary care' is not measured by a fixed rule, but by the usages of different places and trades."

In volume 6, at section 7776, Thompson's Law of Negligence, this is said:

"On the question whether the employer has exercised reasonable and ordinary care in providing and maintaining safe appliances and places for work, the plaintiff may show the general practice of other employers in similar lines of employment in these respects."

The trend of modern authority seems to be to this effect. There is a multitude of decisions from various states so declaring, from among which we cite the following:

*Myers v. Hudson,* 150 Mass. 125; *Cass v. Railway Co.* (Mass.), 14 Allen 448; *Wheeler v. Mfg. Co.,* 135 Mass. 294; *McMahon v. McHale,* 174 Mass. 320; *Titus v. Railroad Co.,* 136 Penn. 618; *Kehler v. Schwenk,* 151 Penn. 505; *Belleville Stone Co. v. Comben,* 61 N. J. 353; *Nadau v. Lumber Co.,* 76 Wis. 120; *Jochem v. Robinson,* 72 Wis. 199; *Swoboda v. Ward,* 40 Mich. 423; *Husziga v. Lumber Co.,* 51 Mich. 276; *Wallace v. Railway Co.,* 136 N. Y. 302; *Berquist v. Chandler Iron Co.,* 49 Minn. 511; *Larson v. Ring,* 43 Minn. 88; *Austin v. Railway Co.,* 93 Iowa 236; *Anderson v. Railway Co.,* 109 Iowa 524; *Propst v. Railway Co.,* 85 Ala. 203; *Kansas City, etc., R. Co. v. Webb,* 97 Ala. 157; *Smith v. Railroad Co.,* 69 Mo. 32;

*Sipes v. Puget Sound E. Ry. Co., and others,* 50
Wash. 585; *Kreig v. Westinghouse,* 29 Sup. Ct. Rep.
619; *Hamann v. Milwaukee Bridge Co.,* 136 Wis. 39;
*Dolan v. Cotton Mills,* 185 Mass. 576; *Jones v. Railroad,* 101 Am. St. Rep. 434; *Wilson v. Woodenware
Co.,* 152 Mich. 540.

It is well settled, and counsel for appellant so
concede, that a defendant, to refute and overcome
a charge of negligence resulting in injury, because
of the employment of any particular agency, method
or system for accomplishing a given result, may show
that he employed an agency, system or method, in
such operation, that is in common use among employees engaged in a like business, on the theory that
the standard of due or ordinary care is the conduct
of the average prudent man under like or similar
circumstances.    In this case defendants no doubt
might properly have shown, if such were the fact,
that the hoist in question was in general use in that
district and elsewhere, for the purpose for which they
were using it, as tending to refute the charge of negligence.    It would seem equally competent, on the
same theory, for the plaintiff to show, if able to do
so, that this hoist was not in common use for the
purposes to which defendants put it, but that only
hoists of a vitally different construction were in fact
commonly employed.    This rule does not invade or
impair the doctrine that the employer need not furnish the best or safest appliances, or those of the
newest or most improved pattern.    This character
of testimony goes to the jury, not as conclusive, but
with other testimony, from all of which, taken and
considered together as an entirety, it is to determine
the ultimate fact, under proper instructions as to
the law of the case, whether a particular machine,
system or method used was reasonably safe.    Indeed,
this case was submitted to the jury under an unob-

jectionable instruction to this point, wherein they are told in terms as matter of law:

"That the defendants were under no obligation, express or implied, to furnish any particular kind of machinery or hoisting apparatus, or to adopt the latest improvements or appliances. The defendants were only bound to exercise ordinary and reasonable care, to the end that the machinery and hoisting apparatus which they did furnish was reasonably safe for the purposes for which it was used."

The ultimate questions of fact, whether the hoisting apparatus furnished was of a reasonably safe character, and if not, whether its insufficiency and unfitness occasioned the accident, or directly contributed thereto, were submitted to the jury upon entirely competent and material testimony.

The case of *Myers v. Hudson, supra,* is in point. The following extract from the syllabus of that case shows a situation closely akin to that in the case at bar:

"A mine was reached through a vertical shaft by a bucket lowered by the unwinding of a rope from the uncoupled drum of an hoisting-engine, and usually controlled in its descent by a brake operated by engineer. Laborers employed in the mine entered the bucket to descend as usual, and, upon word being given, the engineer started to let it down, but soon found that the brake was not holding. The bucket fell rapidly for many feet, when it was suddenly stopped by planks across the shaft, and the laborers were hurt. In actions against the employer to recover for such injuries, there was evidence that the brake, besides a loss of initial efficiency, was in design and original construction insufficient; that there were safety contrivances for controlling such descent, some of which the defendant used elsewhere about the mine; and that gearing used in hoisting had,

through wear and a change made in it by the defendant, become less useful as a possible means of stopping the bucket if the brake failed to hold, and, in fact, proved ineffectual to stop the bucket at the time; also that no person had been previously hurt in going down in the bucket.''

In holding that the case was properly sent to the jury, in the course of its opinion, that court has this further to say:

''The plaintiffs were allowed to show that other machinery and appliances than those used by the defendant would have been safer; for example, a strap brake, a friction V, so called, or a reversible engine. In order to aid the jury in determining whether the defendant had exercised reasonable care in providing and maintaining the machinery actually in use, it was competent to show what other kinds of machinery and appliances were used elsewhere, and might have been used at shaft No. 1.''

The right to show a general custom or usage of a business as a standard of comparison for the jury, in aiding it to determine whether the employer has used or failed to use reasonable care in furnishing ordinary safe appliances for the use of its servants, is strongly stated in the following excerpt from the opinion of the court in the case of *Titus v. Railroad Co., supra:*

''All the cases agree that the master is not bound to use the newest and best appliances. He performs his duty when he furnishes those of ordinary character and reasonable safety, and the former is the test of the latter; for, in regard to the style of implement or nature of the mode of performance of any work, 'reasonably safe' means safe according to the usages, habits and ordinary risks of the business. Absolute safety is unobtainable, and employers are not insurers. They are liable for the consequences,

not of danger, but of negligence; and the unbending test of negligence in methods, machinery and appliances is the ordinary usage of the business. No man is held by law to a higher degree of skill that a fair average of his profession or trade, and the standard of due care is the conduct of the average prudent man.''

While it is true that there are cases from courts of the highest respectability which deny this doctrine, still we are of the opinion that the conclusion which has been here reached is supported by the weight of authority and the better reason. When confined to a general or common use, as in this case, the objection to this character of testimony is largely removed. It seems clear that a plaintiff should not be permitted to institute a comparison between the methods or appliances of a defendant with some particular method or appliance, but such comparison must be limited to a common usage. *Haines v. Spencer,* 167 Fed. 266, plainly notes this distinction and states the reason for it.

Going right to the admissibility of, and the right to have the jury consider, testimony of the character under consideration, in *Jones v. Kansas City, etc., R. R. Co., supra,* this instruction was given and approved by the supreme court of Missouri on review:

''And in determining whether it, the defendant, did use reasonable and ordinary care in that regard, you may take into consideration the appliances and means, if any, which were adopted and in common and general use at the time for that purpose, at similar places by prudently and properly conducted railroads.''

Commenting on this view, in *Haines v. Spencer, supra,* the court there said this character of testimony is justified on the ground that, ''the conduct of the master being on trial, it is proper for the jury to

know what appliances are in common use in the particular business involved.''

So here, the conduct of the defendant is on trial on the charge that an unsafe and unfit hoist was furnished. What better means could be afforded a jury, as an aid in determining the question of the reasonable safety of this hoist, than by comparison with machinery in general and common use for like purpose, inasmuch as the standard of due care is the conduct and action of the average prudent man under like or similar circumstances?

In the recent valuable case of *Kreigh v. Westinghouse* *et al., supra,* in point on several questions here involved, the complaint charged negligence, among other grounds, in the following particulars:

''1.   The defendants were careless and negligent in furnishing and operating a defective, improper, and unsafe derrick to raise, move and lower said tub or bucket.

''(a)   Said derrick was so constructed and operated that there was no means of moving the arm thereof and said bucket or tub after it was emptied, horizontally to or over the north wall of said building, excepting by the employees of the defendants violently pushing the tub or bucket with sufficient force to cause it to clear the wall of the building, and also move with it said arm.

''(b)   Said derrick was so constructed and operated that there were no means of stopping or controlling it or the tub or bucket attached thereto after the bucket or tub was emptied and started toward and over the wall of said building.

''(c)   The ropes and pulleys on said derrick were defective, insecure and improperly arranged and used.''

Plaintiff was struck and injured by the bucket, above referred to, attached by a rope to the end of

the boom or arm of the derrick that was operated with but one guy rope. Testimony was introduced tending to show that the usual method of constructing such derricks was to provide them with two ropes, one attached on either side of the end of the boom, to be used to haul it back and forth, and for the purpose of steadying its operation, or by the attachment of a lever to the mast in such a way that a man operating the lever could control the swing of the boom. The boom in use had but one guy rope, which the testimony showed was used for hauling the loaded bucket over the top of the wall to the place where the load was dumped on the roof. The method of returning the bucket for lowering was by a strong push of the boom, the single guy rope thereof hanging loose at the time. A demurrer was sustained to the testimony, and the case dismissed. The judgment was reversed and remanded by the United States circuit court. In the opinion were stated the following matters, pertinent to some of the questions under consideration here:

"The duty of the master to use reasonable diligence for providing a safe place for the men in his employ to work in and to carry on the business of the master for which they are engaged has been so frequently applied in this court, and is now so thoroughly settled, as to require but little reference to the cases in which the doctrine has been declared. The employee is not obliged to examine into the employer's methods of transacting his business, and he may assume, in the absence of notice to the contrary, that reasonable care will be used in furnishing appliances necessary to carrying on the business.  *  *  * The duty of providing a reasonably safe place for the carrying on of the work is a continuing one, and is discharged only when the master furnishes and maintains a place of that character.  *  *  *

Where workmen are engaged in a business more or less dangerous, it is the duty of the master to exercise reasonable care for the safety of all his employees, and not to expose them to the danger of being hurt or injured by the use of a dangerous appliance or unsafe place to work, where it is only a matter of using due skill and care to make the place and appliances safe. There is no reason why an employee should be exposed to dangers unnecessary to the proper operation of the business of his employer. * * * The plaintiff's witnesses, experts in this field of operation, testified that the proper construction and management of such a derrick required that its boom should be rigged with two guy ropes instead of one, or that the mast should be provided with a lever by means of which the men in control could safely operate the boom. In that view, we think it was a question for the jury to determine whether the operation of this derrick, which would swing the bucket into the field of operations where the plaintiff and others were constructing the wall, and might be injured unless the operation of the boom were properly controlled, was not attributable to faults of construction and equipment as well as to negligent operation at the time of the injury. It is contended by the defendant that the boom could have been safely operated with one rope had the men used care in the operation thereof. But, in view of the testimony referred to, we think it was a question for the jury to determine whether the character of derrick furnished by the master discharged his obligation to furnish and maintain for the plaintiff and his associates a reasonably safe place in which to labor, and whether that kind of derrick was not of itself a dangerous instrumentality when operated where others were likely to labor in the course of their employment."

It was argued in that case by the defendants that the testimony showed that the injuries of the plaintiff were caused solely by the negligence of fellow servants in operating the derrick, and that was not actionable. The court held that to be a question for the jury to determine, as well as to whether the defective appliance contributed directly to produce the injury. On this point the court said:

"In other words, we think that upon this branch of the case it was a question for the jury to determine whether the alleged defective appliances contributed directly to produce the injuries complained of."

The derrick was a machine complete in itself. It was testified, by those qualified to speak to that point, that the construction of this particular one was faulty. The court held, in effect, even though it might be used with safety, under certain conditions and circumstances, and that it was a complete machine, that these facts did not necessarily, as matter of law, make it reasonably safe. So here, that the hoist in question was a complete piece of mechanism, that it might at times be properly controlled, and had often been safely used, did not necessarily make it such a plant as under the law the defendant was bound to furnish his employee.

In the instructive case on the main point in controversy here, *Hamann v. Milwaukee Bridge Co.*, *supra*, this was said:

"The appellant first contends that there was no evidence from which the jury could find that the method adopted for lowering the machine in question was not reasonably safe. It supports such contention almost entirely upon the ground that plaintiff failed to prove that the general custom of doing such work among other manufacturers was discordant from the method adopted by the defendant. Such failure might be conceded *arguendo*, and still appellant's

main contention fail to result. When the facts are made known to a jury, and especially when it is proved that there is a feasible safer method frequently or sometimes adopted by others for performing the same work, a situation is presented for the exercise of judgment as to whether the method pursued is reasonably safe. True, this may be supplemented by proof of a general custom to exercise greater precautions or adopt greater safeguards, but such proof is by no means necessary to the establishment that the mode adopted by defendant was unreasonably perilous, or, in other words, not reasonably safe.''

It is argued that the falling out of the key was the proximate cause of the accident, and that even had the hoist been equipped with the usual band brake, or frictional appliances, they might not have worked, or the engineer might have failed to use them and injury might, although the hoist had been thus equipped, have occurred just at it did; that to permit a recovery, under such circumstances, is to invade the field purely of speculation and guess. The question as to whether the safety appliances, if present, would have worked, or would have been used by the engineer, need not be discussed. If, in order to make the hoist reasonably safe, such friction appliances were necessary, then it was the duty of the defendant to have supplied them, and it was the right of the deceased to have them there. If the legal duty to furnish them was upon defendant, he clearly may not escape liability for failure to furnish, because possibly they might not have been effectual, or might not have been used, even if at hand. This would be to speculate in his favor against the natural presumption that they would be serviceable and would be used to that end.

On this question the case of *Wilson v. Wooden-*

*ware Co.*, *supra*, is directly in point and precisely covers the situation here, and holds contrary to the view urged by appellant's counsel. We quote from that opinion as follows:

"The defendant is charged with negligence in three particulars, viz., (1) in not providing suitable cables for the elevator; (2) in not providing and maintaining a proper safety device; (3) in failing to properly inspect the apparatus.

"It is manifest that without the breaking of the cable there could have been no injury, and equally plain that an effective safety device would have prevented it, although the cable did break, and a proper inspection, if acted upon, should have prevented the use of the elevator in its crippled condition. Had there been an absence of negligence in any one of these particulars, no accident would have happened, or the injury would have been averted. Hence they may be called concurrent causes, for each could be said to be an efficient cause, without which there would have been no injury. Being so charged, negligence in any one or two or all of these particulars, if found, would support a verdict."

We come now to a consideration of the parties. The defendant says the action was against the partnership, either as the Joe Dandy Gold Mining Company, or as Coe & Rice, and only against the partnership as such. The defendant Coe died, between the time of the rendition of the first judgment, which was reversed, and the commencement of the trial, resulting in the present judgment, and therefore counsel say the action abated. The trial court, apparently taking the view that the action was against the individuals, W. R. Coe and D. H. Rice, comprising a mining partnership, held that the action did not abate with the death of Coe, and ordered the trial to proceed against the surviving

defendant. The testimony plainly establishes that W. R. Coe and D. H. Rice were mining partners, operating the Joe Dandy lode mining claim, at the time of the injury. The liability, if any, is joint and several, as for a tort, and the defendants in the action were named as W. R. Coe and D. H. Rice, they being the sole members of the partnership. Either could have been sued alone and held for the entire liability. When sued jointly, the death of the one in no way affected the liability of the other, and the action might lawfully proceed to judgment, as it did, against the surviving defendant, who was the surviving partner. Plaintiff had a right to look to one or both to respond in damages for the injury, if any, which she suffered through the negligence of either, while engaged in carrying on their joint enterprise, in the usual and ordinary way. The question of application of partnership property to the payment of any judgment which may be recovered is not now here for consideration, neither can be; no more is the question of contribution from the estate of a deceased partner. Those questions may have to be settled sometime, but not now, or here. The complaint needed no amendment, nor was there necessity for a supplemental complaint. A cause of action was stated against Coe and Rice jointly, and the suit was properly prosecuted to judgment against Rice alone. Indeed, it could properly have proceeded in no other way. The legal representative of Coe, if liable at all, could not have been lawfully joined with Rice as a co-defendant, as they would be liable in wholly different capacities. Rice was not a new party, nor was he in any sense a substituted party.

The question here is whether, the action having abated against the deceased partner, it can be prosecuted to judgment against the survivor? It is said

(3)

in 1 Cyc. 73, and supported by the authorities there cited, that,

"Where a partner dies pending an action against the members of the firm, the action does not abate, but may proceed to judgment against the surviving partner."

This statement fits the present situation, and declares the right in plaintiff to proceed with the trial against Rice alone.

In the case of *King v. Bell,* 13 Neb. 409, where the plaintiff brought an action against four individuals, alleging the death of her husband by reason of over-indulgence in intoxicating liquors furnished him by the defendants, it was objected by the defendand King that, the suit having been brought against King & Webber, as co-partners, and Webber having died during the pendency of the action, the cause should not proceed to judgment against King. In response to this contention the court there said:

"The objection is not sustained by the facts, as these parties are described in the title of the case as 'John King and Fred Webber, doing business as King & Webber.' The action is against them as individuals, although they are thereafter described in the petition as 'King & Webber.' The code makes the title of the case a part of the petition, and it is unnecessary to repeat the names of the parties plaintiff or defendant. It is sufficient thereafter to describe them as 'plaintiff' or 'defendant,' or in any other manner sufficient to designate them. Where, therefore, parties are designated by name as defendants in the title, the addition of the relation they occupy to each other, such as a description of them as 'partners,' will not restrict the action to one against the firm alone, such as 'King & Webber, a firm formed for the purpose of doing business in this state.' The plea in abatement, therefore, is

entirely unwarranted. We do not decide, however, that even if the action had been brought against the partnership as a firm, that the plaintiff would not be liable; as the general rule is that if a partner, in pursuance of the partnership business, commit a wrongful act, the members of the firm are liable.''

We cite in support of our conclusion on this branch of the case: Collyer's Law of Partnership, paragraph 727; Pomeroy's Remedies, 3rd ed., paragraphs 281, 307; Bates on Partnership, paragraph 1055; *Williams v. Kent,* 15 Wendell 360; *Hess v. Lowrey,* 7 L. R. A. 90, and cases cited; 4 Am. Enc. Law, 1st ed., 12, 13; Lindley on Partnership, paragraph 771; 2 Lindley on Mines, 802; *Stuart v. Adams,* 89 Cal. 367; *Doty v. Irwin-Phillips Co.,* 15 Col. App. 96; 5 Enc. Pl. & Pr. 839; and 15 Enc Pl. & Pr., 891.

In the case of *Hess v. Lowrey, supra,* the court said, among other things:

''The nature of the damage sued for, and not the nature of the cause, determines whether or not the action survives. * * * From every point of view the conclusion follows that the cause of action did not die as to both partners, because one member of the firm died, and the proceeding to judgment against the survivor was not, of itself, erroneous. * * * The death of one partner in no wise affects the liability of the survivor, who, upon the happening of that event, becomes individually liable to make good the joint undertaking of both.''

It is next contended that if the absence of band or friction brakes from the hoist rendered it defective, and therefore not reasonably safe, then such defect was of so obvious a nature that the deceased must be held, as a matter of law, to have assumed the risk or danger arising therefrom. We cannot assent to this proposition. Under the facts of the

case the trial court properly submitted that question to the jury. It would have been error to have done otherwise. The court's instruction upon the subject correctly states the law. The testimony shows that the deceased was employed, as a common miner, to work under ground at the bottom of the works. The hoist was in a building at the surface some distance from the shaft, and Van Why had no employment at or about the hoist and had no connection with its operation. He had been engaged in the work but for a short time, some seven or eight days, knew nothing about machinery, had had no experience with engines, and was unfamiliar with the mechanism of hoisting plants. The danger or added risk resulting from the absence of band or friction brakes would not necessarily be apparent to the mind of the average person. To the ordinary observer neither the absence of such brake, nor the danger attendant thereon, suggest themselves. Even had Van Why been possessed of the knowledge that the hoist was without such brake, still that fact alone would not charge him with the assumption of the risk of the danger which might flow therefrom. Such knowledge, in order to charge him with the assumption of risk attendant upon such imperfect construction, must also convey to his mind the fact of the danger which might, or was likely to, result from the employment of such a defective agency. The question is, did he know, ought he to have known, in the exercise of ordinary prudence, that the risk, the danger, not merely the defect alone, existed? Ought he, with knowledge of absence of a band or friction brake from the hoist, to have reasonably foreseen that it might in its operation cause him injury?

In *Myers v. Hudson, supra,* these facts were shown:

"The several plaintiffs, who were underground laborers in the defendant's mine, were undertaking to descend into the mine through a perpendicular shaft by means of a bucket, as they had been in the habit of doing. The bucket was supported by a wire rope or cable which wound around a drum, and was usually controlled in its descent by means of a shoe-brake which pressed upon the drum head. The shoe-brake was operated by the defendant's assistant engineer, by means of a lever. On the occasion of the accident, the plaintiffs had all entered the bucket, and, upon word being given, the assistant engineer started to let the bucket descend, and after it had descended a few feet he found the brake was not holding, and the bucket fell rapidly for about one hundred and twenty-five feet, when it was suddenly stopped by landing planks across the shaft, and the plaintiffs were hurt."

Commenting upon these facts the court said:

"One ground upon which the defendant has relied in the argument before us has been, that, upon the facts disclosed, the plaintiffs must be held to have assumed the risks of the safety of the machinery. There are many cases in which the plaintiffs have for this reason been held to be debarred from recovering damages for injuries. But in the present case we do not find undisputed facts sufficient to make such a course proper. The risk of the safety of machinery is not assumed by an employee, unless he knows the danger, or unless it is so obvious that he will be presumed to know it. He takes the risk of known or obvious dangers, and not of others. * * * It was no part of the plaintiffs' duty to operate the machinery for lowering the bucket. Their work was underground. We cannot say that the risk was so

obvious that they must be held to have assumed it. The defendant even now strongly resists the inference that the machinery was in fact dangerous or unsuitable for use, and argues that the evidence conclusively shows the contrary. The plaintiffs might well rely somewhat upon the expectation that the defendant would provide proper machinery for lowering them to their work, and they were not called upon to be over strict in an examination into its safety. We cannot say that, as matter of law, the plaintiffs must be held to have taken the risk, and that, for this reason, they are debarred from a recovery.''

In the case of *Tanner v. Harper*, 32 Colo. 156, under a somewhat similar state of facts, this was said:

''There was no proof that plaintiff knew of the incline in the track. He had worked but a few days after it was connected with the doors. It was no part of his duty to operate the truck. His work was confined to the bottom of the shaft. The only question was, whether or not, by the exercise of ordinary care, he should have observed the defect in the track? The incline was not so marked that it could readily be detected by observation alone. So that, in the circumstances of this case, the question of his alleged contributory negligence was within the province of the jury to determine.''

In *McGowan v. La Plata M. & S. Co*, 92 Fed. 862, commenting upon the question here for consideration, Judge Hallett said:

''After all, it is not so much a question whether the party injured had knowledge of all the facts in the situation, but whether he is aware of the danger which threatens him. What avails it to him that all the facts are known if he cannot make the

deduction that peril arises from the relation of the facts?''

.Further citations in support of the proposition, under a state of facts such as is disclosed here, that the question of the assumption of risk is for the jury, would seem unnecessary, but attention is called to these additional authorities as being in point:

*C. M. Ry. Co. v. O'Brien,* 16 Colo. 219; *Davidson v. Cornell,* 132 N. Y. 228; *Gill v. Homrighausen,* 79 Wis. 634; Bailey's Master's Liability, 185; *Sampson M. & M. Co. v. Schaad,* 15 Colo. 197; *Clow v. Boollz,* 92 Fed. 572; *U. P. R. Co. v. Jarvi,* 53 Fed. 65.

Upon the contention that there was an abuse of the privilege of advocacy on the part of counsel for plaintiff, in his opening address to the jury, we are constrained to hold, particularly in view of our opinion that the testimony as to the common practice in use in the Cripple Creek district of employing hoisting plants with bands or friction brakes, for the purpose of comparison, was admissible, that he was clearly within his legal rights in his statement of the case, to which this objection alone goes. It may be that a less direct and rugged talk would have been more pleasing and agreeable, not only to opposing counsel, but to the court as well. The statement surely, to say the least, could have been polished to advantage. However, these are not matters affecting legal rights, but are rather subjects for consideration in the field of oratory, literature and good taste, having to do with the refinement of thought, the niceties of diction, and the proprieties of the occasion.

It is further vigorously urged that the court erred in refusing the instruction tendered by defendant upon the doctrine of *res ipsa loquitur,* to the

effect that the fact that the accident happened was not evidence of negligence on the part of defendant. The conclusive answer to this is that at no stage of the litigation was it ever contended that the doctrine of *res ipsa loquitur* is applicable. The affirmative instructions of the court, which state clearly, concisely and accurately the ground, and only ground, upon which recovery might be had, excluded all possibility of the application of that doctrine. The alleged negligence is a failure to properly equip the hoisting plant with band or friction brakes, and that was the matter specially and specifically submitted to the jury, and upon which the verdict was returned. On this question the doctrine of *res ipsa loquitur* has, and can have, no possible bearing. There was no error, therefore, in a refusal to give this particular instruction, since by no stretch of the imagination can the proposition it contained be said to be in any way involved. Even if it be conceded that, strictly and technically, defendant was entitled to have had such an instruction given, still it is clearly manifest, upon the issues and proofs, that the failure to give it was harmless, and could have had no effect upon the conclusion finally to be reached.

Numerous errors are assigned on the refusal, and in the giving, of instructions. We have examined the entire record with great care, covering instructions given and refused, but are unable to discover any ground, on this score, of which the defendant may justly complain, or indeed any other matter of alleged error requiring further discussion. The case was fairly submitted to the jury, for its determination upon all questions of fact, under quite as favorable instructions as the defendant was entitled to have. From the whole record we are confidently of the opinion that justice has been done,

that the testimony warranted the verdict, and that no prejudicial error intervened. The judgment is therefore affirmed.                    *Affirmed.*

Chief Justice Steele and Mr. Justice White concur.

Decided April 4, A. D. 1910; rehearing denied Nov. 14, A. D. 1910.